FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 25, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SUEANN, N.,[1]<br><br>               Plaintiff,<br><br>    vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br>               Defendant. | No. 1:19-cv-03114-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>**ECF Nos. 14, 15** |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

6.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

ORDER - 3

1    The Commissioner has established a five-step sequential analysis to

2  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

3  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

4  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

5  gainful activity," the Commissioner must find that the claimant is not disabled.  20

6  C.F.R. § 416.920(b).

7    If the claimant is not engaged in substantial gainful activity, the analysis

8  proceeds to step two.  At this step, the Commissioner considers the severity of the

9  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

10  "any impairment or combination of impairments which significantly limits [his or

11  her] physical or mental ability to do basic work activities," the analysis proceeds to

12  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

13  this severity threshold, however, the Commissioner must find that the claimant is

14  not disabled.  20 C.F.R. § 416.920(c).

15    At step three, the Commissioner compares the claimant's impairment to

16  severe impairments recognized by the Commissioner to be so severe as to preclude

17  a person from engaging in substantial gainful activity.  20 C.F.R. §

18  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

19  enumerated impairments, the Commissioner must find the claimant disabled and

20  award benefits.  20 C.F.R. § 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 13, 2016, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of June 1, 2014.  Tr. 174-81.  The application was denied initially, and on reconsideration.  Tr. 98-101; Tr. 105-11.  Plaintiff appeared before an administrative law judge (ALJ) on November 17, 2017.  Tr. 41-71.  On April 27, 2018, the ALJ denied Plaintiff's claim.  Tr. 16-38.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 13, 2016.  Tr. 21.  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease; obesity; and depressive disorder.  Tr. 21.  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr.

23.  The ALJ concluded Plaintiff has the RFC to perform light work with the

following limitations:

> [Plaintiff] can lift twenty pounds occasionally and ten pounds
> frequently.  [Plaintiff] can sit, stand, and walk for six of eight hours in
> a normal workday.  [Plaintiff] can never climb ladders, ropes, or
> scaffolds.  [Plaintiff] can occasionally balance, climb ramps and stairs,
> bend, stoop, crouch, and crawl.  [Plaintiff] is able to perform the basic
> mental demands of competitive, remunerative, unskilled work,
> including the ability to understand, carry out, and remember simple
> instructions, to respond appropriately to supervision, coworkers, and
> usual work situations, and to deal with changes in a routine work
> setting.  [Plaintiff] should have little or no public contact.  [Plaintiff]
> can have superficial interaction with coworkers.

Tr. 24-25.

At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 30.  At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, and testimony from the vocational expert, there

were jobs that existed in significant numbers in the national economy that Plaintiff

could perform, such as cleaner housekeeper and assembler production.  Tr. 31.  In

the alternative, the ALJ found that, if Plaintiff were limited to sedentary work with

the same nonexertional limitations identified in the RFC, there were jobs existed in

significant numbers in the national economy that Plaintiff could perform, such as

packing line worker, escort vehicle driver, document preparer, and stuffer, toys.

Tr. 31-32.  Therefore, the ALJ concluded Plaintiff was not under a disability, as

defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 32.

On March 25, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  She raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.  Whether the ALJ properly evaluated lay witness evidence.

ECF No. 14 at 2.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the medical opinions of Kirsten Nestler, M.D.  ECF No. 14 at 9-13; ECF No. 16 at 7-8.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

ORDER - 8

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Id*. "In addition, the regulations give more weight to

opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th

Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

F.3d 821, 830-31 (9th Cir. 1995)).

ORDER - 9

*1. Dr. Nestler*

On June 4, 2016, Dr. Nestler performed a consultative mental status examination.  Tr. 407-11.  She diagnosed Plaintiff with major depressive disorder and opined the following limitations: (1) she "would not have difficulty" performing simple/repetitive tasks or detailed/complex tasks, as her cognitive testing was normal; (2) she "would have difficulty" accepting instructions from supervisors and interacting with coworkers and the public; (3) she "would have difficulty" performing work activities on a consistent basis without special instruction and "would have difficulty" maintaining regular attendance; and (4) she "would have difficulty" completing a normal workday/workweek with the usual stress encountered in the workplace.  Tr. 410-11.

The ALJ gave significant weight to Dr. Nestler's opinion that Plaintiff would not have limitations performing simple or repetitive tasks, finding that it was consistent with Plaintiff's presentation at the examination and the test results. Tr. 28.  He incorporated the opinion into the RFC, stating "claimant is able to perform the basic demands of competitive, remunerative, unskilled work, including the ability to understand, carry out, and remember simple instructions."  Tr. 25.

The ALJ gave little weight to the remainder of Dr. Nestler's opinions.  Tr. 28-29.  Because these opinions, as interpreted by the ALJ, were contradicted by those of Dr. Donahue, the ALJ was required to provide specific and legitimate

ORDER - 10

reasons for rejecting them. *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831).

First, the ALJ determined Dr. Nestler's opinion that Plaintiff "would have difficulty" interacting with supervisors, coworkers, and the public, was inconsistent with the longitudinal record and treatment notes. Tr. 28. An ALJ may reject limitations "unsupported by the record as a whole." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). Moreover, incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ noted that routine progress notes and mental status reports of a treating source, Mr. Bickel, consistently indicated that Plaintiff presented as cooperative and pleasant at appointments, with good judgment/insight and a "normal mood and affect." *See, e.g.*, Tr. 614, 622, 625, 633, 636, 640, 643 (also noting depression), 647, 651. He reasonably interpreted Plaintiff's generally unremarkable mental status examinations to be inconsistent with Dr. Nestler's opinion that her depression severely limits her ability to interact with others. Moreover, the ALJ noted that Plaintiff's social functioning limitations

were accommodated in the RFC by limiting her contact with the public and with coworkers.[3]

Plaintiff contends ample evidence supports Dr. Nestler's limitation and offers evidence of examination notes reporting tearfulness, flat affect, restlessness, poor eye contact, and anxiety.  ECF No. 16 at 7-8.  Even acknowledging these records, the ALJ's interpretation is rational, particularly where the majority of records indicate Plaintiff presented as cooperative and had a normal mood and affect.  Further, Plaintiff argues the ALJ failed to consider the differences between social interaction with a doctor and social interaction under the "pressures of a workplace."  ECF No.14 at 10-11.  However, a claimant's demeanor and presentation at appointments may be relied upon to undermine mental complaints. *See Molina,* 674 F.3d at 1113 (claimant's allegations were undermined by her demeanor and presentation); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224

---

[3] The ALJ noted that the RFC sufficiently accommodates any moderate social limitations by stating Plaintiff is able to "respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting," but that she "should have little or no public contact," and only "superficial interaction with coworkers."  *See* Tr. 28 (citing Tr. 24, 25).

ORDER - 12

1    (9th Cir. 2010).  Accordingly, this was a specific and legitimate reason to reject Dr.

2    Nestler's opinion regarding social limitations.

3        The ALJ similarly found Dr. Nestler's opinions that Plaintiff would have

4    difficulty performing consistent work without special instructions and would have

5    difficulty maintaining regular attendance at work due to her depression were

6    inconsistent with treatment notes throughout the record.  Tr. 29.  He noted, for

7    example, that Plaintiff's treating physicians reported she had normal recent and

8    remote memory and was regularly oriented to time, place, and person.  Tr. 643.

9    The findings are consistent throughout the record.  *See, e.g.*, Tr. 286 (normal

10   orientation); Tr. 290 (alert, no memory loss, normal orientation); Tr. 293, 299, 302,

11   308, 311, 338, 342 (alert, oriented, cooperative); Tr. 359 (on time, unaccompanied,

12   no distress).  The ALJ reasonably interpreted this evidence of cognitive and

13   neurological abilities to be inconsistent with Dr. Nestler's opined limitations.

14   Plaintiff contends the record supports Dr. Nestler's opinion and offers evidence

15   that she manifested memory problems during Dr. Nestler's own exam.  ECF No.

16   14 at 12.  However, while Plaintiff recalled only one out of three items after a five-

17   minute delay, she was able to remember six digits forward and four digits

18   backward and ultimately was determined to have normal cognitive functioning by

19   Dr. Nestler.  Tr. 409-10.  On this record, the ALJ's interpretation of the evidence is

20   rational and supported by substantial evidence.  This was a specific and legitimate

ORDER - 13

reason to reject Dr. Nestler's opinion.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision.").

In addition, the ALJ determined Plaintiff's daily activities and "demonstrated ability to attend appointments on her own" were inconsistent with the same opinions (i.e., that Plaintiff would have difficulty maintaining consistent work without special instructions and maintaining regular attendance).  Tr.  29.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).  Moreover, a claimant's ability to conduct a "wide range of activities" and "come on time for [her] appointment[s]," suggests that she has the ability to attend to necessary matters.  *See, e.g.*, *Turner v. Berryhill*, 693 F. App'x 722, n.1 (9th Cir. 2017).  Here, the ALJ concluded Plaintiff's ability to "engage in activities that she finds enjoyable, such as hiking and camping," coupled with her ability to attend medical appointments punctually over the course of the adjudicatory period belied any notion of a debilitating mental limitation in regular attendance and consistent work.  Tr. 29.  While punctually arriving at a handful of appointments is not indicative of a claimant's ability to regularly attend work, *see Villanueva v. Berryhill*, No. 6:17-cv-00064-HZ, 2018 WL 1626034, *7 (D. Or Apr. 4, 2018) (punctually arriving at two appointments is not indicative of ability to

sustain regular attendance at work over a longer period of time), Plaintiff attended

at least 31 appointments in 2017, 24 appointments in 2016, 29 appointments in

2015, and 4 appointments in late 2014 (comprising a total of 88 appointments

during the adjudicatory period).  She attended multiple appointments in the same

week on numerous occasions (three appointments per week: June 2015 (Tr. 334,

331, 328); two appointments per week: December 2014 (Tr. 412, 416); April 2015

(Tr. 435, 438); May 2015 (Tr. 347, 344, 448, 336); June 2015 (Tr. 326, 324);

September 2015 (Tr. 313, 283); October 2015 (Tr. 287, 304); March 2016 (Tr. 484,

398); May 2016 (Tr. 486, 389); July 2016 (Tr. 492, 693); October 2016 (Tr. 665,

524); February 2017 (Tr. 518, 655); May 2017 (Tr. 512, 640); July 2017 (Tr. 633,

707); August 2017 (Tr. 630, 709, 509, 711, 626, 622, 619, 615); and September

2017 (Tr. 712, 713).  Moreover, examination notes indicated she was often

unaccompanied at her appointments.  *See, e.g.*, Tr. 321, 331, 338, 350, 356, 359,

364, 368 ("patient is on time. She is unaccompanied").  Plaintiff does not dispute

her attendance at appointments, but argues it is not indicative of her ability to

attend work regularly.  ECF No. 14 at 12.  On this record, the ALJ reasonably

concluded that, to the extent Dr. Nestler's opinion alleged debilitating depression

affecting Plaintiff's ability to attend work regularly and perform work consistently,

Plaintiff's performance throughout the adjudicatory period showed otherwise

based on her activities and routine attendance at appointments.

ORDER - 15

1    The ALJ set forth specific and legitimate reasons for rejecting the limitations

2    assessed by Dr. Nestler.

3    **B. Plaintiff's Symptom Claims**

4    Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in

5    discrediting her symptom claims.  ECF No. 14 at 13.  An ALJ engages in a two-

6    step analysis to determine whether to discount a claimant's testimony regarding

7    subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must

8    determine whether there is objective medical evidence of an underlying

9    impairment which could reasonably be expected to produce the pain or other

10   symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The

11   claimant is not required to show that [the claimant's] impairment could reasonably

12   be expected to cause the severity of the symptom [the claimant] has alleged; [the

13   claimant] need only show that it could reasonably have caused some degree of the

14   symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

15   Second, "[i]f the claimant meets the first test and there is no evidence of

16   malingering, the ALJ can only reject the claimant's testimony about the severity of

17   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

18   rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

19   omitted).  General findings are insufficient; rather, the ALJ must identify what

20   symptom claims are being discounted and what evidence undermines these claims.

ORDER - 16

1  *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

2  Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

3  symptom claims).  "The clear and convincing [evidence] standard is the most

4  demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

5  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

6  924 (9th Cir. 2002)).

7          Factors to be considered in evaluating the intensity, persistence, and limiting

8  effects of a claimant's symptoms include: (1) daily activities; (2) the location,

9  duration, frequency, and intensity of pain or other symptoms; (3) factors that

10 precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

11 side effects of any medication an individual takes or has taken to alleviate pain or

12 other symptoms; (5) treatment, other than medication, an individual receives or has

13 received for relief of pain or other symptoms; (6) any measures other than

14 treatment an individual uses or has used to relieve pain or other symptoms; and (7)

15 any other factors concerning an individual's functional limitations and restrictions

16 due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R.

17 §§ 416.929 (c).  The ALJ is instructed to "consider all of the evidence in an

18 individual's record," "to determine how symptoms limit ability to perform work-

19 related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

20

ORDER - 17

The ALJ found Plaintiff's medically determinable impairments could cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  Tr. 26.

### 1. Daily Activities

The ALJ found Plaintiff's claims of debilitating impairments were inconsistent with her reported daily activities.  Tr. 26-27.  A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict [her] other testimony, or (2) the claimant "is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  However, it is well-established that a claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

Here, the ALJ noted that Plaintiff alleged she was unable to work due to disabling back pain and testified that she needed to lie down "at least [six] hours of the day due to pain."  Tr. 26.  However, the ALJ noted that such allegations were inconsistent with her ability to walk five miles in a day and engage in activities such as camping.  As the ALJ noted, Plaintiff testified she walked five miles in one

day (tracking the mileage with her Fitbit), and that part of her walk occurred on the

Cowiche Canyon Trail, a hiking trail with loose gravel and larger rocks to step

around, Tr. 26 (citing Tr. 55-56); reported to treatment providers multiple times

that she enjoyed camping with her family, Tr. 27 (citing Tr. 637 (provider

prescribing DEET Deep Woods Off insect repellent) Tr. 697, 709, 711-12

(Plaintiff listing and therapist acknowledging camping as a "functional strength");

Tr. 669 (Plaintiff reporting camping as a family tradition)); and admitted she

enjoyed gardening/weeding in her small garden.  Tr. 27; *see also* Tr. 57-58.  The

ALJ found these activities, which involved physical activity, bending, stooping,

pulling, kneeling, and sleeping on a cot, to be inconsistent with Plaintiff's

symptom allegations, including that "she was unable to walk for more than five

minutes without stopping and resting."  Tr. 231.  He also perceived and rejected

Plaintiff's attempts to "minimize" the activities at the hearing.  *See* Tr. 26-27.

Plaintiff argues the activities are not inconsistent with her claimed

limitations and that she is being penalized for attempting to lead a normal life.

ECF No. 14 at 14-15; ECF No. 16 at 2.  She asserts there is no inconsistency

between her stated limitation that she could walk no more than five minutes and

her testimony about walking five miles because she had recently reported difficulty

walking for more than five minutes to her doctor, her doctor prescribed new

medication and encouraged her to continue walking, and her functional abilities

ORDER - 19

1  increased with the medication change.  ECF No. 14 at 14-15 (citing Tr. 486-87; Tr.

2  509).  However, this fact alone does not cure the inconsistency identified by the

3  ALJ; in addition to her testimony at the hearing, Plaintiff reports walking five

4  miles in a day to treatment providers at various times.  *See* Tr. 512, 515.

5  Moreover, if Plaintiff's pain improved substantially from the medication

6  prescribed to allow her to walk five miles as opposed to five minutes, her

7  subsequent claims that her medication did not improve her functioning are called

8  into question.  *See* ECF No. 14 at 15-17.  Overall, the ALJ reasonably interpreted

9  Plaintiff's ability to walk five miles on multiple occasions to be inconsistent with

10  her stated limitations, *see* Tr. 231 (can only walk for five minutes), Tr. 224 (can

11  only walk for 15 minutes), and to undermine her subjective symptom complaints.

12       Additionally, Plaintiff faults the ALJ for speculating as to the physical

13  aspects of the activities and contends the activities required minimal exertion.  ECF

14  No. 14 at 15; ECF No. 16 at 2.  The ALJ did not engage in improper speculation.

15  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his

16  findings, the law judge is entitled to draw inferences logically flowing from the

17  evidence.") (cited sources omitted).  Rather, he relied on evidence in the record,

18  and reasonably drawn inferences flowing from a basic understanding of the listed

19  activities, in part, to reject Plaintiff's contention that her reported symptoms of

20  degenerative disc disease, obesity, and depression (which included, Tr. 193,

ORDER - 20

needing to lie down for at least six hours per day due to pain, Tr. 51, spending 50-60% per day lying down, Tr. 226, pain that does not allow her to walk, lift, bend, squat, or sit, Tr. 231, throbbing and aching pain from engaging in activity and only being able to walk for five minutes before needing to rest, Tr. 224, only being able to walk for 15 minutes at a time and not being able to read or "do any arts and crafts," Tr. 52, stress and anxiety attacks, Tr. 54, difficulty sleeping and difficulty concentrating, Tr. 55, inability to do anything requiring focus including watching television, reading, or playing games) substantially limit her functioning to the point of "debilitat[ion]." Tr. 26-27; *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *Molina*, 674 F.3d at 1113 ("[e]ven where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding the ALJ did not err in finding the claimant's ability to care for her own personal needs, cook, clean, shop, interact with family, and manage her finances suggested the claimant "was quite functional" and undermined the alleged severity of her impairments).

Plaintiff's daily activities are relevant to the alleged severity of her specific symptoms including debilitating back pain, inability to walk for more than 5 minutes, anxiety attacks and depression, and loss of the ability to concentrate or

focus due to pain.  The ALJ reasonably interpreted Plaintiff's activities – walking

five miles shortly before the hearing, gardening as recently as June 7-8, 2015

despite reporting increased pain on June 4, *see* Tr. 326-29, and camping months

before the hearing – to be inconsistent with her testimony and alleged symptoms.

This was a clear and convincing reason to find Plaintiff's subjective symptom

testimony less credible.

     *2. Positive Response to Treatment*

     The ALJ found Plaintiff's symptom allegations were inconsistent with her

positive responses to medication and treatment.  Tr. 27.  The effectiveness of

medication and treatment is a relevant factor in determining the severity of a

claimant's symptoms.  20 C.F.R. § 416.929(c)(3); *see Warre v. Comm'r of Soc.

Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled

with medication are not disabling for purposes of determining eligibility for

benefits) (internal citations omitted); *Tommasetti,* 533 F.3d at 1040 (a favorable

response to treatment can undermine a claimant's complaints of debilitating pain or

other severe limitations).

     Here, the ALJ noted Plaintiff represented to treatment providers that her

prescribed medications improved her symptoms.  Tr. 27.  Specifically, in regard to

symptoms stemming from her physical impairments, the ALJ noted Plaintiff

reported in July 2015 "the medications are working reasonably well," and denied

ORDER - 22

adverse effects, Tr. 321; she reported in February 2016 "she does not think that she has been finding much functional impairment with the help of her pain medications," Tr. 292; she reported in September 2017 that the Ambien she was prescribed seemed to be working, Tr. 713; and that throughout 2017, she denied symptoms of depression, sleep disturbance, and fatigue on multiple occasions, Tr. 622, 633, 636, 651, 655.  Additionally, as to symptoms stemming from her depression, the ALJ noted Plaintiff reported to Mr. Bickel, who consistently treated her, that "the depression meds are working well," and that while she was "still crying a little bit…overall she is feeling better."  Tr. 636.  Based on these reports documented in the record, the ALJ concluded Plaintiff's physical and mental symptoms improved with medication and treatment, and that such improvement was inconsistent with her allegations of debilitating impairments.  Tr. 27.

Plaintiff contends the ALJ chose data points not representative of a broader development and failed to demonstrate she improved "to the point that would allow her to return to work," even if medication provided some relief.  ECF No. 14 at 16.  She offers evidence that in August 2017, when she said her medications were helping, she reported they only reduced her pain by 50%, ECF No. 14 at 16 (citing Tr. 509), and she claims "the very fact her providers continued to provide such heavy-duty medications – including eventually prescribing long-acting morphine (Tr. 293) – also gives greater credence to her pain.  ECF No. 14 at 16.

ORDER - 23

1   However, even considering the evidence Plaintiff identifies, the ALJ's conclusion

2   is supported by substantial evidence.  For instance, in 2016 and 2017, Plaintiff

3   continuously reported her prescribed medications were working well to reduce her

4   pain and were improving her functional abilities.  *See, e.g.*, Tr. 484 (able to

5   increase activity level and spend less days in bed); Tr. 489 (reports medications are

6   helping her accomplish chores, that she is doing well overall, and that she wants to

7   postpone steroidal injection as a result); Tr. 492 (medications working okay most

8   days and pain is more controlled); Tr. 509 (medication reduces pain by 50% and

9   allows her to remain functional and be active with her children); Tr. 512

10  (medication improving her ability to function; reports walking five miles); Tr. 518

11  (medication working well and increasing her ability to take care of herself; pain

12  level between 4-5 out of 10); Tr. 524 (medications enabling her to do chores); Tr.

13  527-28 (medications help her engage in activities like walking, doing dishes,

14  swimming, and visiting family).  The ALJ's interpretation of the evidence was

15  reasonable, thus, the Court defers to the ALJ's finding.  *Tommasetti*, 533 F.3d at

16  1038 ("[W]hen the evidence is susceptible to more than one rational interpretation"

17  the Court will not reverse the ALJ's decision).

18      As to her mental complaints, Plaintiff argues the record shows waxing and

19  waning in her depression symptoms, rather than clear improvement.  ECF No. 14

20  at 16 (citing Tr. 502).  Plaintiff asks for a different interpretation of the evidence;

ORDER - 24

1  however, the ALJ's interpretation is reasonable and will not be disturbed.  Multiple

2  examinations recorded Plaintiff had negative depression screenings and/or did not

3  report depression symptoms to her doctors.  *See, e.g.*, Tr. 285, 290, 292, 377, 399,

4  481, 484, 492, 512, 515, 521, 524, 614, 622, 625, 633, 636, 647.  Additionally,

5  Plaintiff reported her prescribed sertraline "has helped her depression some

6  [though she] still gets very irritable," Tr. 407; *see also* Tr. 512, 515 (Plaintiff

7  reporting her medication helps control her depression symptoms), and that her

8  counseling "has been beneficial and is teaching her methods of coping with her

9  depression."  *See* Tr. 510 (treatment provider notes Plaintiff appears more upbeat).

10  The ALJ reasonably concluded Plaintiff's depression symptoms had improved

11  based on her consistent non-reporting and negative depression screenings, as well

12  as statements of improvement.

13      Overall, the ALJ's conclusion that Plaintiff's physical and mental symptoms

14  improved with medication and treatment was rational and supported by substantial

15  evidence.  This was a clear and convincing reason to give less weight to Plaintiff's

16  subjective symptom testimony.

17      *3.  Use of a Non-Prescribed Assistive Device*

18      The ALJ found Plaintiff's use of a non-prescribed cane called into question

19  the veracity of her alleged limitations.  Tr. 27.  The unprescribed and unwarranted

20  use of assistive devices is a valid consideration in an ALJ's credibility analysis.

*See Nicole L. v. Comm'r of Soc. Sec.,* No. 1:17-CV-01713-AA, 2019 WL 1407416, at *7 (D. Or. Mar. 28, 2019) (citing *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012)); *Quesada v. Colvin*, 525 F. App'x 627, 629 (9th Cir. 2013) (affirming ALJ's finding that a claimant's use of an unprescribed cane and walker, coupled with evidence that he had a normal gait, good mobility, lack of neurological defects, and normal muscle strength, undermined his subjective symptom testimony).

Here, the ALJ noted Plaintiff indicated that she required a cane to walk, Tr. 27 (citing Tr. 232), and that she sometimes presented with a cane, Tr. 413, despite numerous routine treatment records demonstrating that she had a normal gait and no station disturbances. Tr. 27. For example, the ALJ highlighted Plaintiff's appointments with Mr. Bickel in August 2017, where Mr. Bickel noted Plaintiff had a "normal gait and station." Tr. 630, 633. Further, the ALJ noted that the use of a cane was inconsistent with Plaintiff's admission that she walked/hiked five miles, as discussed *supra*. Tr. 27. Plaintiff argues the ALJ failed to cite to "any source who found she did not need a cane." ECF No. 14 at 17. However, as in *Quesada*, the ALJ cited to multiple examination notes indicating Plaintiff had a normal gait and station. *Quesada*, 525 F. App'x at 629. Those same examination notes indicate Plaintiff had normal muscle tone and motor strength. *See, e.g.*, Tr. 629, 636. The ALJ reasonably interpreted Plaintiff's use of a non-prescribed cane

to be inconsistent with her unremarkable examinations pertaining to gait, station,

and muscle tone, and to adversely reflect on her credibility. The ALJ's finding is

supported by substantial evidence in the record and was reasonable for the ALJ to

consider in assessing Plaintiff's symptom complaints.

### 4. Work History

The ALJ found Plaintiff's intermittent history of work and decision to leave

the workforce prior to the alleged onset date suggested she was not motivated to

return to work. Tr. 30. Evidence of a poor work history that suggests a claimant is

not motivated to work is a permissible reason to discredit a claimant's testimony

that she is unable to work. *Thomas*, 278 F.3d at 959; SSR 96–7 (factors to

consider in evaluating credibility include "prior work record and efforts to work");

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. § 416.929 (work

record can be considered in assessing credibility). The Court in *Thomas*

specifically approved an ALJ's rejection of a claimant's credibility when the

claimant's "extremely poor work history" reflecting "little propensity to work in

her lifetime," i.e., where a claimant's "work history was spotty, at best, with years

of unemployment between jobs, even before she claimed disability." *Thomas*, 278

F.3d at 959. In addition, an ALJ may consider that a claimant stopped working for

reasons unrelated to the allegedly disabling condition when weighing the

1    claimant's symptom reports.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir.

2    2001).

3         Here, the ALJ noted Plaintiff's income records showed:

4         She worked in remunerative employment from 1997 to 2001, and then
         had zero or very low income for the next five years.  She earned about

5         $15,000 in 2007 and then had earnings that deteriorated substantially
         the following years.  She testified that she left the workforce in 2009

6         to care for her children and then became disabled in 2014 after falling
         down while gardening in her yard.

7

8    Tr. 30.  He concluded this work history "suggests [the] possibility that she is out of

9    the workforce at this time because she is caring for children (an honorable and

10   valuable endeavor), or because she detached from the workforce for personal

11   reasons long before she had injuries or other impairments."  Tr. 30.  Plaintiff

12   argues her work history does not discredit her because she did not allege disability

13   until 2014 and did not apply for disability until 2016.  ECF No. 14 at 17; ECF No.

14   16 at 3.  However, the fact that Plaintiff did not allege disability until 2014, or

15   apply for disability until 2016, has no bearing on the ALJ's analysis regarding her

16   intermittent work history and absence from work prior to the alleged onset date.

17   The ALJ permissibly considered that Plaintiff stopped working for reasons other

18

19

20

ORDER - 28

than her alleged impairments.[4]  The ALJ's finding that Plaintiff's prior work history suggested a lack of motivation to work is supported by substantial evidence.

**C. Lay Witness Evidence**

Plaintiff contends the ALJ improperly rejected statements provided by her family members, including her two daughters, her husband, her sister, her niece, and her aunt.  ECF No. 14 at 18-20; ECF No. 16 at 7-10.  An ALJ must consider the statements of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an

---

[4] Though not necessary to affirm the ALJ's finding regarding work history, the Court notes that Plaintiff reported she was a "stay at home mom before kids all went to school," and that she is "not sure what job she will be going back to at this point."  Tr. 347; *see also* Tr. 408 ("she left that job because they were not able to give her enough hours and she decided to stay home and raise her children at home").  Further, the Court notes that during a 2014 examination, Plaintiff reported that "she would like to work but does not think it is possible" and that her husband "will not let [her]" work.  Tr. 417.

ORDER - 29

1  impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913;

2  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family

3  members in a position to observe a claimant's symptoms and daily activities are

4  competent to testify as to her condition."). If lay witness statements are rejected,

5  the ALJ "must give reasons that are germane to each witness." *Nguyen v. Chater*,

6  100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919). But where

7  the ALJ gives clear and convincing reasons to reject a claimant's testimony, and

8  where a lay witness's testimony is similar to the claimant's subjective complaints,

9  the reasons given to reject the claimant's testimony are also germane reasons to

10 reject the lay witness testimony. *Valentine,* 574 F.3d at 694. Similarly, the ALJ is

11 not required "to discuss every witness's testimony on a[n] individualized, witness-

12 by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony

13 by one witness, the ALJ need only point to those reasons when rejecting similar

14 testimony by a different witness." *Molina*, 674 F.3d at 1114.

15     Here, the ALJ gave little weight to the lay witness statements submitted by

16 Plaintiff's family members and friends. Tr. 30. Because these statements are

17 similar to Plaintiff's symptom testimony, and the ALJ properly discredited her

18 symptom testimony for several clear and convincing reasons, the ALJ needed only

19 point to the same reasons to discredit the lay testimony. *Molina*, 674 F.3d at 1114;

20 *Valentine*, 574 F.3d at 694. The ALJ did so here. First, he found the lay witness

ORDER - 30

1    testimony, like Plaintiff's testimony, was inconsistent with Plaintiff's daily

2    activities.  Tr. 30.  He reasonably determined the lay witness testimony (which

3    included reports that Plaintiff often remains in bed, unable to perform basic tasks,

4    unable to walk long distances, and that she experiences disabling pain in her wrists,

5    ankles, and shoulder joints, Tr. 29 (citing Tr. 274-77, 281-82)) was inconsistent

6    with Plaintiff's reports of walking five miles, hiking, and camping.  Tr. 30 (citing

7    Tr. 637, 697, 699, 709, 711-12).  Second, he found the lay witness testimony, like

8    Plaintiff's testimony, was inconsistent with Plaintiff's reports of improved

9    functioning with prescribed medications.  Tr. 30.  In support, he cited records

10   indicating Plaintiff reported her pain medications were working well, reducing the

11   overall level of her pain, and increasing her functioning during activities of daily

12   living, *see* Tr. 30 (citing Tr. 319, 321) and a record indicating Plaintiff reported her

13   depression medications were working well and helping her feel better overall.  Tr.

14   30 (citing Tr. 636).  These constitute germane reasons to reject the lay witness

15   testimony.  *See Valentine*, 574 F.3d at 694 (ALJ may reject lay testimony that

16   essentially reproduces the claimant's discredited testimony).

17          In addition, the ALJ concluded the lay witness testimony was inconsistent

18   with Plaintiff's "candid presentation during routine appointments."  Tr. 30.

19   Inconsistency with the medical evidence is a germane reason for rejecting lay

20   witness testimony.  *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503,

511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports). The ALJ cited several medical records to support his conclusion, Tr. 30 (citing Tr. 614-15, 622 (reporting normal mood, affect, gait, and station); Tr. 633, 636, 651, 655 (indicating Plaintiff did not report depression or sleep disturbances)). Plaintiff argues that the ALJ failed to properly explain the contradictions and provide his own interpretation. ECF No. 16 at 16. However, as discussed *supra*, the ALJ explained throughout his opinion how Plaintiff's presentation at appointments, including the fact that she denied/did not report symptoms she later alleged to be severe, and reported activities were inconsistent with her subjective symptom complaints. This was a germane reason to reject the lay witness testimony.

In sum, the ALJ provided germane reasons for rejecting the lay witness testimony and Plaintiff is not entitled to remand on this ground.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

ORDER - 32

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is

**GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE**.

DATED June 25, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 33